USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/29/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ADA PEREZ,

                    Plaintiff,              11 Civ. 8655(RWS)

     -against-                              OPINION

METROPOLITAN TRANSPORTATION AUTHORITY,
JOHN D'AGOSTINO and OLEG OLSHANETSKIY,

                    Defendants.

------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiff

          WOLIN & WOLIN
          420 Jericho Turnpike, Suite 215
          Jericho, NY  11753
          By:  Alan Edward Wolin, Esq.


          Attorneys for Defendants

          HEIDELL, PITTONI, MURPHY & BACH, LLP
          99 Park Avenue
          New York, NY  10016
          By:  Laura Anne Delvecchio, Esq.
               Richard Michael Sullivan, Jr., Esq.

**Sweet, D.J.**

Defendants Metropolitan Transportation Authority (the "MTA"), John D'Agostino ("D'Agostino") and Oleg Olshanetskiy ("Olshanetskiy," and, with the MTA and D'Agostino, the "Defendants") have moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the verified complaint (the "Complaint") of plaintiff Ada Perez ("Perez" or the "Plaintiff") alleging violations of Plaintiff's constitutional rights resulting from urine testing performed over a one-year period during Plaintiff's employment with the MTA.  Based upon the conclusions set forth below, the motion is granted and judgment will be entered dismissing the Complaint.

## Prior Proceedings

On November 29, 2011, Plaintiff filed the Complaint asserting eleven causes of action, including (1) Fourth, Fifth and Fourteen Amendment violations for a urine test conducted on January 22, 2010, (2) Fourth, Fifth and Fourteenth Amendment violations for urine tests conducted on August 14, 2009, March 26, 2010 and July 2, 2010, (3) Fifth and Fourteenth Amendment violations alleging denial of procedural and substantive due

1

process, (4) Fifth and Fourteenth Amendment violations alleging denial of Plaintiff's liberty interest without due process of law, (5) Fifth and Fourteenth Amendment violations on equal protection grounds, (6) violation of Title VII of the Civil Rights Act of 1964 resulting from discrimination on the basis of national origin, (7) violation of Title VII resulting from discrimination on the basis of gender, (8) violation of New York State Executive Law §§ 296, 297 resulting from discrimination on the basis of national origin, (9) violation of New York State Executive Law §§ 296, 297 resulting from discrimination on the basis of gender, (10) violation of New York City Administrative Code § 8-107 resulting from discrimination on the basis of national origin and (11) violation of New York City Administrative Code § 8-107 resulting from discrimination on the basis of gender. The Complaint seeks actual damages, compensatory damages, punitive damages, attorneys' fees and injunctive relief.

On February 15, 2012, Defendants filed their motion to dismiss. The motion was heard and marked fully submitted on May 9, 2012.

**The Complaint**

2

The Complaint alleges the following facts, which are accepted as true at this stage of the litigation.  The MTA is a public authority operating under New York State law that provides interstate public transportation services and is an "employer" as that term is defined in the applicable statutes. D'Agostino, at all times relevant to this litigation, was and still is a Deputy Chief of Police for the MTA.  He is the commanding officer of the MTA's Internal Affairs Bureau and Medical Control Unit and Occupational Health Services Department ("OHS").  Olshanetskiy, at all times relevant to this litigation, was and still is a physician and is the Medical Review Officer ("MRO") for the MTA's OHS.  Plaintiff is a female of Puerto Rican national origin.

On July 7, 2008, Plaintiff became employed by Defendant MTA as a police officer.  On June 11, 2009, while in the performance of her duties, Plaintiff suffered an injury to her wrist and was compelled to undergo two surgeries.  Plaintiff returned to work in August 2009, but was on restricted duty and was assigned to an MTA office at 341 Madison Avenue, New York, New York.  Plaintiff remains on restricted duty and, as a result, has not and does not perform the usual and customary

3

duties of a police officer.  During her employment with the MTA,
Plaintiff has not received any disciplinary action and has never
been accused or suspected of engaging in any prohibited alcohol
or drug abuse.

        Since Plaintiff returned to restricted duty in August
2009, Defendants have compelled her to be subject to four urine
tests.  On January 22, 2010, Plaintiff, who was not performing
the duties of a police officer, was summoned to take a urine
test that Defendants described as a random drug test.  On August
14, 2009, March 26, 2010 and July 20, 2010, Plaintiff was
summoned by Defendants to appear at the MTA's OHS to be
medically evaluated for a determination as to whether she was
fit for duty and/or full duty.  On these occasions, Plaintiff
was evaluated by Olshanetskiy, with reference to her wrist, for
strength, range of motion and flexion.  At the conclusion of
these evaluations, Defendants compelled Plaintiff to undergo
urine testing.  During these tests, Plaintiff was escorted by an
OHS employee to a bathroom, the bathroom door was kept open,
Plaintiff was given agents to wash her hands and was told to
return to collect a urine cup.  Before Plaintiff was given
clearance to enter the bathroom a second time, she was
instructed to fill the cup at least half way and to not flush

4

the toilet until after she handed the cup to the OHS employee.
No other similarly situated police officer on restricted duty as
a result of an injury had been required to undergo urine testing
in this manner, and several non-Puerto Rican male officers on
modified duty were not required to undergo urine testing in this
manner.

On October 8, 2010, Enoch Whitfield, a sergeant in the
Medical Control Unit, advised Plaintiff that the urine testing
on August 14, 2009, March 26, 2010 and July 20, 2010 was not
conducted pursuant to Defendants' policy, that it was for her
"benefit" and that Plaintiff had the option to refuse.

On or about December 28, 2010, Plaintiff filed a
written Charge of Discrimination with the United States Equal
Employment Opportunity Commission ("EEOC") and assigned Charge
No. 520-2011-00901.  In the Charge of Discrimination, Plaintiff
alleged that the MTA had discriminated against her based upon
her national origin and gender.  On August 22, 2011, the EEOC
issued a Notice of Right to Sue to Plaintiff with reference to
her Charge of Discrimination.  The Notice advised Plaintiff of
her right to file an action against the MTA in the appropriate
federal court within ninety days of her receipt thereof.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

"Subject matter jurisdiction ordinarily must be established at the time an action is commenced." Trans Union LLC v. Lindor, 393 Fed. Appx. 786, 789 (2d Cir. 2010) (citing Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 574-75, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004)). A case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A facially sufficient complaint may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the asserted basis for

6

jurisdiction is not sufficient.  See TM Patents, L.P. v. Int'l Bus. Machs. Corp., 121 F. Supp. 2d 349, 367-68 (S.D.N.Y. 2000); Peterson v. Continental Airlines, Inc., 970 F. Supp. 246, 249 (S.D.N.Y. 1997).  A plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  Makarova, 201 F.3d at 113; see also Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**Defendants' Motion To Dismiss Is Granted**

7

As noted above, the Complaint alleges eleven causes of action brought under 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; the New York State Executive Law §§ 296, 297; and the New York City Administrative Code § 8-107.

Because the Complaint fails to allege sufficient facts to state a claim for unreasonable search and seizure, a violation of procedural or substantive due process or an equal protection violation, Plaintiff's claims alleging constitutional violations, brought under 42 U.S.C. § 1983, are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff's Title VII discrimination claims are dismissed pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because this Court lacks subject matter jurisdiction to decide these untimely claims and because the Complaint fails to state a claim upon which relief can be granted. The Court declines to extend pendant jurisdiction over Plaintiff's state law claims, and the Complaint is dismissed with leave to replead.

**A. Counts I, II, III, IV & V: The Complaint Fails To State A § 1983 Claim Upon Which Relief Can Be Granted**

8

1. **Counts I, II, III, IV & V: The Complaint Fails To Assert A § 1983 Claim Against The MTA**

To hold a municipality liable under § 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[A] municipality cannot be made liable [under § 1983] by application of the doctrine of respondeat superior." Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Instead, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality [itself] was the moving force behind the alleged injury." Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008) (citation omitted). The custom and policy must be described with factual specificity, rather than bare and conclusory statements. Perez v. County of Westchester, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000). Additionally, a municipality can be liable under Monell for the single act of an employee with final policymaking authority in the particular area involved. See City of St. Louis v. Praprotnik, 485 U.S.

112, 121-123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Pembaur, 475
U.S. at 480.  "The critical characteristic of final policymakers
when employment is at issue is whether the municipal official
has authority to formulate the rules governing personnel
decisions rather than authority to make decisions pursuant to
those rules—e.g., the hiring and firing of subordinates.  A
subordinate officer, although not a final policymaker, may
expose a municipality to liability if a policymaker ordered or
ratified the subordinate's actions."  Williams v. City of New
York, 690 F. Supp. 2d 338, 344 (S.D.N.Y. 2010) (internal
quotation marks and citations omitted).


        The Complaint fails to identify a custom or policy
that caused a constitutional injury.  However, Plaintiff
contends that D'Agostino and Olshanetskiy are officials to whom
the MTA has delegated final authority with reference to the
matters at hand.  The Complaint identifies D'Agostino as the
commanding officer of the MTA's Internal Affairs Bureau and
Medical Control Unit and OHS, and the Complaint identifies
Olshanetskiy as the Medical Review Officer for OHS.  According
to Plaintiff, it was the MTA departments headed by D'Agostino
and Olshanetskiy that committed the constitutional violations
alleged, and the decisions of these two individual defendants

are sufficient to bind the MTA.  Although the Complaint alleges
D'Agostino and Olshanetskiy to have been "grossly negligent
and/or deliberately indifferent in their supervision of
employees of the MTA," the Complaint does not allege that
D'Agostino and Olshanetskiy had the authority to formulate rules
governing personnel decisions.  Plaintiff's opposition to the
motion to dismiss contends that D'Agostino's office was
responsible for managing sick leave and service-related injury
cases and assisting with the coordination and evaluation of such
cases with the MTA OHS and the MTA Workers' Compensation Unit,
and that Olshanetskiy's office was responsible for medically
evaluating and determining if an employee is fit for duty
following a report of sick leave or service-related injury.
Nowhere in the Complaint or Plaintiff's opposition does
Plaintiff describe the responsibilities of D'Agostino or
Olshanetskiy to include policy formulation or rulemaking as
opposed the mere authority to make decisions pursuant to the
policy or rules in place.  As such, the Complaint fails to
allege a valid § 1983 cause of action against the MTA, and all §
1983 causes of action against the MTA are dismissed.

     2. **Counts I & II: The Complaint Fails To Allege A Claim For
Unreasonable Search And Seizure**

Counts I and II of the Complaint allege Fourth, Fifth and Fourteenth Amendment violations on the basis of unreasonable search and seizure.  Count I focuses on the urine test conducted on January 22, 2010, and Count II focuses on the urine tests conducted on August 14, 2009, March 26, 2010 and July 20, 2010. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV. "[C]ompulsory urinalysis of public employees qualifies as a 'search and seizure' within the meaning of the Fourth Amendment."  Coppinger v. Metro-North Commuter R.R., 861 F.2d 33, 35 (2d Cir. 1988).  However, public employees working in safety sensitive jobs may be subject to compulsory drug testing based upon a reasonable suspicion standard as opposed to the probable cause standard applied to other warrantless searches. Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 622-23, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); see also Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (holding that drug testing of Custom Service employees seeking promotion to positions having direct involvement in drug interdiction or requiring the incumbent to carry firearms need only meet standard of reasonableness in order to meet requirements of the Fourth

12

Amendment).  "Random testing of safety-sensitive employees has
been approved, even in the absence of a safety-triggering
event."  Rothenberg v. Daus, No. 08 Civ. 567(SHS)(RLE), 2010 WL
3860425, at *15 (S.D.N.Y. Sept. 8, 2010); see also Drake v.
Delta Air Lines, Inc., 147 F.3d 169, 171-72 (2d Cir. 1998)
("Warrantless drug urinalysis testing of employees in safety-
sensitive jobs may be consonant with the Fourth Amendment where
part of a systematic, uniformly applied testing program (such as
random testing), or where based on the employer's individualized
'reasonable suspicion' of drug use by the employee.") (internal
citations omitted).

        With respect to the January 22, 2010 urine test,
Defendants contend that police officers hold "safety-sensitive"
positions and that random urinalysis to test for drugs is
reasonable.  Plaintiff, however, highlights that the Complaint
alleges that at the time of the January 22, 2010 test, Plaintiff
was not performing the usual and customary duties of a police
officer.  At the time of the test, the Complaint alleges that
Plaintiff was on restricted duty, employed in civilian clothes
at the MTA's offices and at no time while Plaintiff was on
restricted duty was she possessing a firearm.  Plaintiff, in her
opposition to Defendants motion to dismiss but not in the

13

Complaint, cites a Memorandum of Agreement between the MTA and

the Police Benevolent Association dated November 2002, which

states that "[t]he parties interpret the federal regulations to

mean that members of the Department who do not carry a firearm

for security purposes are not performing safety sensitive duties

and will not be subject to the US DOT/FTA alcohol and drug

testing procedure."


It is well-settled that a Court cannot consider

documents outside the pleadings on a Rule 12(b)(6) motion to

dismiss unless the documents are incorporated by reference in

the complaint or are integral to the complaint.  "To be

incorporated by reference, the complaint must make a clear,

definite and substantial reference to the documents . . . [and]

[t]o be integral to a complaint, the plaintiff must have (1)

actual notice of the extraneous information and (2) relied upon

the documents in framing the complaint."  DeLuca v. AccessIT

Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal

quotation marks, citations and alterations omitted); see also

Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir.

2002).  Here, the Complaint does not make a clear reference to

the November 2002 agreement between the MTA and the Police

Benevolent Association, nor is there any indication that

14

Plaintiff relied upon this Memorandum of Understanding in
framing her Complaint.  As such, it would be inappropriate for
the Court to consider this document that is extraneous to the
Complaint.

The facts, as they are alleged in the Complaint,
establish Plaintiff to be employed in a "safety-sensitive"
position.  While Plaintiff, in her opposition to the motion to
dismiss, focuses on the fact that she was on restricted duty and
not in possession of a firearm, these facts are insufficient to
negate Plaintiff's safety-sensitive employee status.  The
Complaint alleges Plaintiff to be employed as a police officer,
and "[b]ecause police officers' work is, by definition, safety-
sensitive, it is a justifiable intrusion upon a police officer's
privacy to ensure that he or she is mentally and physically fit
to carry out the duties and responsibilities required of a
member of the service.  By joining such an organization,
Plaintiff implicitly accepted greater intrusions on her
privacy." Davis v. City of New York, No. 06 CV 3323(SJ)(RML),
2007 WL 2973695, at *5 (E.D.N.Y. Sept. 28, 2007).  Not having
possession of a firearm does not automatically establish
Plaintiff to be in a non-safety sensitive position.  See, e.g.,
Burke v. New York City Transit Auth., 739 F. Supp. 814, 825-26

15

(S.D.N.Y. 1990) (describing signal work employees as holding safety-sensitive positions); Kreuter v. Reuter, No. 01-CV-5229(NGG), 2002 WL 31946715, at *1 (E.D.N.Y. Dec. 5, 2002) (signal tower operator is a safety-sensitive position as defined by regulation); Int'l Bd. of Teamsters v. Dep't of Transp., 932 F.2d 1292, 1304 (9th Cir. 1991) (upholding random drug testing of commercial truck drivers); Bluestein v. Skinner, 908 F.2d 451, 457 (9th Cir. 1990) (upholding random drug testing of flight instructors and dispatchers). Because the Complaint pleads Plaintiff to have been employed as a police officer, Plaintiff held a safety-sensitive position and could be subject to random drug testing. Accordingly, the Complaint fails to plead sufficient facts establishing the random drug test conducted on January 22, 2010 to be a violation of Plaintiff's constitutional rights.

With respect to the drug tests conducted on August 14, 2009, March 26, 2010 and July 20, 2010, Plaintiff contends that these three tests were conducted in violation of the MTA's "Federal Substance Abuse Policy." Although not referred to by name, the Complaint does refer to the "MTA's policy," which provides that drug testing will be conducted in five instances: (1) pre-employment, (2) upon reasonable suspicion, (3) randomly,

16

(4) post-accident and (5) after a violation, upon return to duty
and for follow-up purposes.  Plaintiff contends that this policy
is consistent with 49 C.F.R. Part 40.  Plaintiff also contends
that these three urine tests occurred during physical
evaluations of whether she was fit to return to work following
the injury to her wrist.  At these evaluation sessions,
physicians evaluated her wrist strength, range of motion and
flexion, and drug testing was in no way related to Defendants'
evaluation of her recuperation from injury.

Notwithstanding the allegations in the Complaint,
applying the relevant case law leads to the conclusion that
Plaintiff's constitutional rights were not violated by these
three drug tests.  "[I]t is also reasonable, within the confines
of the Supreme Court authority [] to test employees, or
prospective employees, in safety-sensitive positions when: (1)
they apply for employment; (2) they have their routine physical
examination; (3) they are seeking promotion to another safety-
sensitive position; (4) they return to work after an extended
absence or suspension; and (5) they resume work after an
incident while on duty."  Laverpool v. N.Y. City Transit Auth.,
835 F. Supp. 1440, 1456 (E.D.N.Y. 1993); see also Beharry v.
M.T.A. N.Y. City Transit Auth., No. 96-CV-1203(FB), 1999 WL

17

151671, at *12 (E.D.N.Y. Mar. 17, 1999) ("Under the regulations [49 C.F.R. Part 40], a state may maintain a more stringent drug testing program than that provided in federal regulations as long as the state program does not make enforcement of the federal regulation 'impossible' or 'was an obstacle' to federal enforcement. The Authority's drug testing during a periodic physical does not fall within the federal regulations, but is within the scope of permissible stringent state drug testing standards.") (citations omitted). Here, Plaintiff was tested during physical examinations following an extended absence from her regular duties. Under the applicable precedent, such testing is not a violation of Plaintiff's constitutional rights.

Plaintiff also objects to the manner in which the test was conducted. In her Complaint as well as her opposition papers to Defendants' motion to dismiss, Plaintiff describes how she was escorted by an OHS employee to a bathroom, the door was kept open, Plaintiff required permission from Defendants' agents to enter the bathroom and was directed to wash her hands, the toilet had a colored dye and Plaintiff was instructed not to flush the toilet until after her sample cup had been delivered to the OHS employee. Plaintiff contends that the manner in which the testing was conducted was overly intrusive and in

18

violation of the procedures established in 49 C.F.R. Part 40.
Plaintiff also contends that she was not advised that the drug
testing was for her benefit until after the three tests had been
conducted.

Whether the collection of a urine sample violates the
Fourth Amendment depends on "the manner in which production of
the urine sample is monitored." Vernonia Sch. Dist. v. Acton,
515 U.S. 646, 658, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995).  The
collecting of samples of urinalysis intrudes upon "an excretory
function traditionally shielded by great privacy." Skinner, 489
U.S. at 626.  In Vernonia School District, the Supreme Court
held that procedures by which male students produced samples at
a urinal along a wall while being observed from behind and
female students produced a sample in an enclosed stall with a
female monitor standing outside listening for sounds of
tampering were not overly intrusive.  See Vernonia Sch. Dist.,
515 U.S. at 658.  Here, the Complaint describes Plaintiff being
required to keep the bathroom door open, being given an agent to
wash her hands and being instructed not to flush the toilet.
Although the requirement that Plaintiff keep the bathroom door
open represents some intrusion on Plaintiff's privacy, the
Complaint fails to allege facts, in light of the Supreme Court's

19

holding in Vernonia School District, establishing this procedure

to be a violation of Plaintiff's constitutional rights.   See

Vernonia Sch. Dist., 515 u.S. at 658 ("These conditions are

nearly identical to those typically encountered in public

restrooms, which men, women, and especially schoolchildren use

daily.   Under such conditions, the privacy interests compromised

by the process of obtaining the urine sample are in our view

negligible.").   As such, the Complaint fails to state a claim

based on the urine tests conducted on August 14, 2009, March 26,

2010 and July 20, 2010.


### 3. Counts III & IV: The Complaint Fails To Allege Sufficient Facts Establishing A Violation Of Procedural Or Substantive Due Process


        "To state a due process violation - procedural or

substantive - Plaintiff must first show a deprivation of a

constitutionally protected property or liberty interest."

Berrios v. State Univ. of N.Y. at Stony Brook, 518 F. Supp. 2d

409, 418 (E.D.N.Y. 2007) (citing White Plains Towing Corp. v.

Patterson, 991 F.2d 1049, 1061-62 (2d Cir.), cert. denied, 510

U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); Costello v.

McEnery, No. 91 Civ. 3475(PKL), 1994 WL 410885, at *4 (S.D.N.Y.

Aug. 3, 1994), aff'd, 57 F.3d 1065 (2d Cir. 1995)).   "It is only

when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process." Berrios, 518 F. Supp. 2d at 418.

The Complaint does not allege that Plaintiff was terminated from her job or that her employment situation was affected in any way.  Although the Complaint alleges that Plaintiff "has experienced and continues to experience humiliation, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants," the Complaint does not allege facts establishing any such damages.  Plaintiff, in her opposition to Defendants' motion to dismiss, claims that the property right of which she was deprived was the expectation that she would be treated in accordance with the applicable agency policy and procedures.  However, "[a] property interest does not exist solely because of the importance of the benefit to the recipient."  Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991).  Plaintiff cannot claim a property interest in the MTA's policy and procedures.  See Beacon Syracuse Assocs. v. City of Syracuse, 560 F. Supp. 188, 195 (N.D.N.Y. 1983) ("[T]here is no property

21

interest in a procedure itself."); see also <u>Curtis Ambulance of</u>
<u>Fla. v. Shawnee Cty. Bd. of Cty. Comm'rs</u>, 811 F.2d 1371, 1377
n.2 (10th Cir. 1987) (collecting cases).  Because the Complaint
fails to allege a valid property interest of which Plaintiff was
deprived, the Complaint fails to state a valid cause of action
for either procedural or substantive due process violations.
The Complaint's cause of action entitled "Violations - Due
Process Liberty Interest" is also dismissed on these grounds.

### 4. Count V: The Complaint Fails To Allege Sufficient Facts Establishing An Equal Protection Violation

"[I]t is axiomatic that [to establish an equal
protection violation] a plaintiff must allege that similarly
situated persons have been treated differently."  <u>Gagliardi v.</u>
<u>Village of Pawling</u>, 18 F.3d 188, 193 (2d Cir. 1994).  To prevail
on a claim for an equal protection violation, a plaintiff must
allege, and ultimately prove, "purposeful discrimination
directed at an identifiable for suspect class," <u>Giano v.</u>
<u>Senkowski</u>, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citation
omitted), or that she has been intentionally treated differently
from others similarly situated, for no rational reason.  <u>Village</u>
<u>of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073, 145
L.Ed.2d 1060 (2000).  The Complaint alleges that Plaintiff is

22

Puerto Rican and that "[n]o other similarly situated Police

Officer, on restricted duty as the result of an injury

sustained, has been required to undergo urine testing in the

manner hereinbefore described.  Several non-Puerto Rican male

officers on modified duty as the result of duty sustained were

no required to undergo urine testing in the manner hereinbefore

described."  Compl. ¶¶ 47-48.


        The analytical framework of a workplace equal

protection claim parallels that of a discrimination claim under

Title VII.  Cunningham v. N.Y. State Dep't of Labor, 326 Fed.

Appx. 617, 620 (2d Cir. 2009) (citing Feingold v. New York, 366

F.3d 138, 159 (2d Cir. 2004); see also Annis v. County of

Westchester, 136 F.3d 239, 245 (2d Cir. 1998) ("In analyzing

whether conduct was unlawfully discriminatory for purposes of §

1983, we borrow the burden-shifting framework of Title VII

claims."); Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996)

("Title VII law . . . is utilized by courts considering § 1983

Equal Protection claims . . . [S]everal circuits have held that,

when § 1983 is used as a parallel remedy with Title VII in a

discrimination suit . . . the elements of the substantive cause

of action are the same under both statutes.").

23

To establish a claim of discrimination under Title VII, Plaintiff must show that she: (1) belonged to a protected class; (2) was qualified for the position she held or sought; (3) suffered an adverse employment action; and (4) did so under circumstances giving rise to an inference of discriminatory intent.  Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). An adverse employment action is a "materially adverse change in the terms and conditions of employment," something "more disruptive than a mere inconvenience or an alteration of job responsibilities" such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted).  Plaintiff contends that under applicable case law, a combination of seemingly minor incidents can constitute an adverse employment action and that the adverse employment action in this case was subjecting Plaintiff to the four urine tests.  However, subjecting Plaintiff to four drug tests over a period of one-year does not rise to a sufficiently disruptive level as described by the Second Circuit in Galabya.  See Forts v. N.Y. City Dep't of Corr., No. 00 Civ. 1716(LTS)(FM), 2003 WL

21279439, at *9 (S.D.N.Y. June 4, 2003) ("Plaintiff's allegations concerning the administration of multiple drug tests to her are insufficient to meet the adverse employment action element of the standard.  Plaintiff has not proffered any evidence that Defendant intended to manipulate the drug testing selection procedure such that such was disproportionally chosen for testing; thus, the drug tests do not amount to an adverse employment action.").  Because the Complaint fails to establish an adverse employment action, Plaintiff has failed to state an equal protection claim.

## B. Counts VI & VII: Plaintiff's Title VII Claims Are Time-Barred And The Complaint Fails To State A Title VII Claim Upon Which Relief Can Be Granted

### 1. Counts VI & VII: Plaintiff's Title VII Claims Are Time-Barred

Pursuant to 42 U.S.C. § 2000e-5(f)(1), a Title VII claim for employment discrimination must be filed in court within 90 days of the claimant's receipt of a Notice of Right to Sue from the EEOC.  There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice.  See Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 526 (2d Cir. 1996) (citing Baldwin Cty. Welcome Ctr. v. Brown,

25

466 U.S. 147, 148 & n.1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)).
"There is a further presumption that a mailed document is
received three days after its mailing." Tiberio v. Allergy
Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011)
(citing Sherlock, 84 F.3d at 525). The initial presumption is
not dispositive, however, "[i]f a claimant presents sworn
testimony or other admissible evidence from which it could
reasonably be inferred either that the notice was mailed later
than its typewritten date or that it took longer than three days
to reach her by mail." Sherlock, 84 F.3d at 526. The 90-day
time period is "strictly enforced" and cannot be extended "by
even one day." Hughes v. Elmira College, 584 F. Supp. 2d 588,
589 (W.D.N.Y. 2008) (citing Holmes v. NBC/GE, 914 F. Supp. 1040,
1042 (S.D.N.Y. 1996); Johnson v. Al Tech Specialties Steel
Corp., 731 F.2d 143, 146 (2d Cir. 1984)) . Here, the date on
the Notice of Right to Sue from the EEOC is August 22, 2011, so
it is presumed that Plaintiff received the notice on August 25.
Plaintiff did not file the Complaint until November 29, 2011, 96
days later.

Plaintiff contends that the 90 day deadline expired on
November 24, 2011, which was Thanksgiving Day and that the Court
was closed from November 25-27, 2011. Although the Court was

26

open on Monday, November 28, 2011, and Plaintiff had until
November 29, 2011 to file, Plaintiff requests that the Court
should apply the doctrine of equitable tolling for the one day.
Equitable tolling "permits courts to deem filings timely where a
litigant can show that '[s]he has been pursuing [her] rights
diligently' and that 'some extraordinary circumstance stood in
[her] way." Torres v. Barnhard, 417 F.3d 276, 279 (2d Cir.
2005) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct.
1807, 161 L.Ed.2d 669 (2005)).  There is nothing in the
Complaint suggesting that Plaintiff was diligently pursuing her
rights or that any "extraordinary circumstances" caused
Plaintiff to file the Complaint after the 90-day period expired.
Accordingly, Plaintiff's Title VII causes of action are time-
barred with respect to all Defendants, and this Court lacks
subject matter jurisdiction to address these claims.

### 2. Counts VI & VII: Title VII Claims Cannot Be Asserted Against Individuals

"Individuals are not subject to liability under Title
VII." Patterson v. Cty of Oneida, 375 F.3d 206, 221 (2d Cir.
2004).  As such, the Title VII claims asserted against
D'Agostino and Olshanetskiy are dismissed.

27

### 3. Counts VI & VII: The Complaint Fails To Allege Sufficient Facts Establishing Title VII Claims

As noted above, the analytical framework of a workplace equal protection claim parallels that of a discrimination claim under Title VII. Cunningham, 326 Fed. Appx. at 620; Annis, 136 F.3d at 245; Jemmott, 85 F.3d at 67. As such, for the reasons detailed above in the discussion of Plaintiff's equal protection cause of action, the Complaint fails to allege sufficient facts establishing a Title VII cause of action.

### C. Counts VIII, IX, X & XI: The Court Declines To Exercise Pendent Jurisdiction With Respect To The Complaint's State Law Causes of Action

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining

28

state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S.
343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); Klein & Co.
Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006)
("[W]here, as here, the federal claims are eliminated in the
early stages of litigation, courts should generally decline to
exercise pendent jurisdiction over remaining state law claims.")
(citation omitted).  Because Plaintiff's federal claims have
been dismissed, pendent jurisdiction over Plaintiff's state law
causes of action will not be exercised, and these claims are
dismissed.

**Conclusion**

Based on the conclusions set forth above, the
Complaint is dismissed.  Leave to replead within twenty days is
granted.

It is so ordered.

**New York, NY**
**May 25 , 2012**

_____
ROBERT W. SWEET
U.S.D.J.

29