UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ADA PEREZ,

                  Plaintiff,          11 Civ. 8655(RWS)

   -against-                  OPINION

METROPOLITAN TRANSPORTATION AUTHORITY,
JOHN D'AGOSTINO and OLEG OLSHANETSKIY,

                  Defendants.

------------------------------------X

A P P E A R A N C E S:

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/12
```

        Attorneys for Plaintiff

        WOLIN & WOLIN
        420 Jericho Turnpike, Suite 215
        Jericho, NY  11753
        By:  Alan Edward Wolin, Esq.

        Attorneys for Defendants

        HEIDELL, PITTONI, MURPHY & BACH, LLP
        99 Park Avenue
        New York, NY  10016
        By:  Laura Anne Delvecchio, Esq.
            Richard Michael Sullivan, Jr., Esq.

**Sweet, D.J.**

Defendants Metropolitan Transportation Authority (the "MTA"), John D'Agostino ("D'Agostino") and Oleg Olshanetskiy ("Olshanetskiy," and, with the MTA and D'Agostino, the "Defendants") have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended verified complaint (the "Amended Complaint") of plaintiff Ada Perez ("Perez" or the "Plaintiff") alleging violations of Plaintiff's constitutional rights resulting from urine tests performed during Plaintiff's employment with the MTA.  Based upon the conclusions set forth below, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.

## Prior Proceedings

On November 29, 2011, Plaintiff filed her initial complaint asserting eleven causes of action, alleging constitutional rights violations, as well as violations of Title VII, New York State Executive Law §§ 296, 297 and New York City Administrative Code § 8-107.  On February 15, 2012, Defendants filed a motion to dismiss the initial complaint.  In an opinion dated May 29, Defendants' motion was granted, and Plaintiff was

1

permitted 20 days to file an amended complaint (the "May 29 Opinion").  See Perez v. Metro. Transp. Auth., No. 11 Civ. 8655(RWS), 2012 WL 1943943 (S.D.N.Y. May 29, 2012).

On June 19, 2012, Plaintiff filed the Amended Complaint, which alleges four causes of action brought under 42 U.S.C. § 1983, including (1) a Fourth, Fifth and Fourteenth Amendment claim alleging unreasonable search and seizure with respect to a urine test conducted on January 22, 2010, (2) a Fourth, Fifth and Fourteenth Amendment claim alleging unreasonable search and seizure with respect to urine tests conducted on August 14, 2009, March 26, 2010 and July 20, 2010, (3) a Fifth and Fourteenth Amendment claim alleging procedural and substantive due process violations and (4) a Fifth and Fourteenth Amendment claim alleging deprivation of a liberty interest without due process of law.

**The Amended Complaint**

Although based on the same facts described in the May 29 Opinion, the Amended Complaint provides additional information not pled in the original complaint.  Accordingly, a full recitation of the facts alleged in the Amended Complaint

2

will be provided.  In the Amended Complaint, Plaintiff alleges
the following facts, which are accepted as true at this stage of
the litigation.

The MTA is a public authority operating under New York
State law that provides interstate public transportation
services and is an "employer" as that term is defined in the
applicable statutes.

D'Agostino, at all times relevant to this litigation,
was and still is a Deputy Chief of Police for the MTA.  He is
the commanding officer of the MTA's Internal Affairs Bureau and
Medical Control Unit and Occupational Health Services Department
("OHS").  According to an MTA Department Manual attached to the
Amended Complaint, D'Agostino is responsible "for managing sick
leave and service-related injury cases and assisting with the
coordination and evaluation of such cases with the MTA
Occupational Health Service Department (OHS)."

Olshanetskiy, at all times relevant to this
litigation, was and still is a physician and is the Medical
Review Officer ("MRO") for the MTA's OHS.  In a letter dated
September 10, 2010 to a physician charged with performing an

3

independent medical examination of Plaintiff, Olshanetskiy identified himself as "Medical Director in charge of the MTA Police Medical Department." The MTA Department Manual attached to the Amended Complaint states that Olshanetskiy is responsible "for medically evaluating and determining if a Member is fit for duty following a report of sick leave or service-related injury."

Plaintiff is a female of Puerto Rican national origin. On July 7, 2008, Plaintiff became employed by the MTA as a police officer. On June 11, 2009, while in the performance of her duties, Plaintiff suffered an injury to her wrist and was compelled to undergo two surgeries. Plaintiff returned to work in August 2009, but was on restricted duty and was assigned to an MTA office at 341 Madison Avenue, New York, New York. Plaintiff remained on restricted duty until February 17, 2012 when she returned to full duty. During the time Plaintiff was on restricted duty, she worked in civilian clothes and did not possess a firearm. Based upon a Memorandum of Agreement between the MTA and the Police Benevolent Association dated November 2002, Plaintiff, during the time that she was on restricted duty, was not in a safety sensitive position. The Memorandum of Agreement states, in relevant part:

4

> The parties interpret the federal regulations to mean that members of the Department who do not carry a firearm for security purposes are not performing safety sensitive duties and therefore will not be subject to the US DOT/FTA alcohol and drug testing procedure.
>
> . . .
>
> The MTA considers members of the Department carrying a firearm off duty not to be performing a safety sensitive function unless they are taking law enforcement action within the MTA service region.  Employees not performing safety sensitive duties on a daily basis such as employees assigned to training outside the MTA service area, employees absent from work for the day (i.e. sick leave, jury duty, union release time, military leave, workers' compensation, vacation, etc.) and employees assigned to restricted duty assignments without a firearm, will remain in the random testing pool.  The US DOT/FTA guidelines provide that these employees may only be tested if they are actually performing safety sensitive duties.  Employees selected for random testing who are either assigned to a [sic] non-safety sensitive duties for the duration of the work-day or are not performing safety sensitive duties for the duration of the work day will be considered unavailable for testing that day.  The parties agree to be bound by any determinations of the US DOT or the FTA to the contrary.

During her employment with the MTA, Plaintiff has not received any disciplinary action and has never been accused or suspected of engaging in any prohibited alcohol or drug abuse.

MTA is subject to various rules, regulations, procedures and policies wherein it can administer urine/drug tests to its employees.  These rules provide for pre-employment

5

testing, reasonable suspicion testing, post-accident testing, random testing and follow-up testing after returning to duty following a prior positive finding for prohibited alcohol or drug use.  MTA has implemented its own substance abuse policy in accordance with applicable federal regulations.  MTA's policy provides that drug or alcohol testing will be conducted (1) pre-employment, including after an absence from work of 90 consecutive days or more, (2) where there is reasonable suspicion, (3) randomly, (4) post-accident, (5) upon return to duty after a positive test and (6) as a follow-up after return to duty.  Return to duty and follow-up testing are to be conducted with reference to an employee who has engaged in conduct in violation of federal regulations or MTA policy.

Since Plaintiff returned to restricted duty in August 2009, Defendants have compelled her to be subject to repeated urine tests.  On January 22, 2010, Plaintiff was summoned to take a urine test under the guise of it being a random drug test.  This test occurred four days prior to Plaintiff undergoing surgery on her wrist, a surgery about which Defendants knew many weeks prior to the January 22 drug test.  Notwithstanding the fact that Plaintiff, at the time, was not performing the usual and customary duties of a police officer,

was not carrying a firearm and was not in a safety sensitive
position, Plaintiff was compelled to submit to the test.

On August 14, 2009, March 26, 2010 and July 20, 2010,
Plaintiff was summoned by Defendants to appear at MTA's OHS to
be medically evaluated for a determination as to whether she was
fit for duty and/or full duty.  The only basis for these
evaluations concerned Plaintiff's wrist, including strength,
range of motion and flexion.  On these dates, Plaintiff met with
Olshanetskiy in his capacity as MRO.  Pursuant to applicable
policies, a police officer is to attend the OHS evaluation with
physician reports, diagnostic test results and medication
information.  The MRO is then to evaluate such records and
determine the employee's work status.  Defendants do not have
the right, pursuant to such evaluation, to compel an employee to
undergo urine testing.  Defendants must advise the employee that
any such testing is for his or her own benefit and that the
employee has the right to refuse testing.

Defendants, at the conclusion of Plaintiff's OHS
evaluations, compelled Plaintiff to undergo urine testing on
August 14, 2009, March 26, 2010 and July 20, 2010.  The decision
to compel Plaintiff to undergo urine testing was made by

7

D'Agostino and Olshanetskiy under the authority delegated to
them by MTA.  On each of these dates, Defendants never advised
Plaintiff of the purpose of the urine testing, never advised her
that the testing was for her benefit and never gave Plaintiff
the option of refusing.  After the conclusion of each
evaluation, Plaintiff was escorted by an OHS employee to a
bathroom.  At all times, the bathroom door was wide open.
Plaintiff had to be given authorization by Defendants' agents to
enter the bathroom to wash her hands, the toilet to which
Plaintiff was directed by Defendants' agents had a colored dye,
Plaintiff was instructed by Defendants' agents to wash her hands
with the bathroom door open and return to collect a urine cup.
Before Plaintiff was given clearance to enter the bathroom a
second time, she was instructed by Defendants' agents to fill
the cup at least half way and was instructed not to flush the
toilet until after she handed the cup to the OHS employee.

On October 8, 2010, Enoch Whitfield, a Sergeant in the
Medical Control Unit, advised Plaintiff, in the presence of
others, that the urine testing on August 14, 2009, March 26,
2010 and July 20, 2010 was not conducted pursuant to Defendants'
policy, that it was for her benefit and that she had the option

8

to refuse.  When asked to submit to a urine test on this occasion, Plaintiff refused.

In or about the end of January 2012 to the beginning of February 2012, prior to Plaintiff's return to full duty, Plaintiff underwent a physical examination to determine if she was able to return to full duty.  At that time, Plaintiff was examined by an MTA physician other than Olshanetskiy.  Unlike prior occasions, Plaintiff was advised that, if she preferred not to, she did not have to take a urine test as part of the examination.

The Amended Complaint seeks actual damages, including wages, salary, bonuses and benefits, compensatory damages for humiliation, mental anguish, emotional distress and physical injury, punitive damages and reasonable attorneys' fees, expert fees, costs and disbursements.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader.  Mills v.

9

Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The
issue "is not whether a plaintiff will ultimately prevail but
whether the claimant is entitled to offer evidence to support
the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d
375, 378 (2d Cir. 1995).

To survive a motion to dismiss pursuant to Rule
12(b)(6), "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct.
1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl Corp. v. Twombly,
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
Plaintiffs must allege sufficient facts to "nudge[ ] their
claims across the line from conceivable to plausible." Twombly,
550 U.S. at 570.  Though the court must accept the factual
allegations of a complaint as true, it is "not bound to accept
as true a legal conclusion couched as a factual allegation."
Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**Defendants' Motion To Dismiss Is Granted In Part And Denied In
Part**

According to Defendants, Plaintiff's municipal claims
against the MTA, Plaintiff's unreasonable search and seizure

10

claims and Plaintiff's due process claims should all be
dismissed.  Each category of claims will be addressed
separately.

## A. The Amended Complaint Fails To Allege A Valid § 1983 Claim Against The MTA

As was noted in the May 29 Opinion, to hold a
municipality liable under § 1983 for the unconstitutional
actions of its employees, "a plaintiff is required to plead and
prove three elements: (1) an official policy or custom that (2)
causes the plaintiff to be subjected to (3) a denial of a
constitutional right." Wray v. City of N.Y., 490 F.3d 189, 195
(2d Cir. 2007) (internal quotation marks and citation omitted);
see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98
S.Ct. 2018, 56 L.Ed.2d 611 (1978).  "[A] municipality cannot be
made liable [under § 1983] by application of the doctrine of
respondeat superior." Pembaur v. City of Cincinnati, 475 U.S.
469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).  Instead, the
plaintiff must "demonstrate that, through its deliberate
conduct, the municipality [itself] was the moving force behind
the alleged injury." Roe v. City of Waterbury, 542 F.3d 31, 37
(2d Cir. 2008) (citation omitted).  The custom and policy must
be described with factual specificity, rather than bare and

11

conclusory statements.  Perez v. County of Westchester, 83 F.
Supp. 2d 435, 438 (S.D.N.Y. 2000).  Additionally, a municipality
can be liable under Monell for the single act of an employee
with final policymaking authority in the particular area
involved.  See City of St. Louis v. Praprotnik, 485 U.S. 112,
121-123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Pembaur, 475 U.S.
at 480.  "The critical characteristic of final policymakers when
employment is at issue is whether the municipal official has
authority to formulate the rules governing personnel decisions
rather than authority to make decisions pursuant to those rules—
e.g., the hiring and firing of subordinates.  A subordinate
officer, although not a final policymaker, may expose a
municipality to liability if a policymaker ordered or ratified
the subordinate's actions."  Williams v. City of N.Y., 690 F.
Supp. 2d 338, 344 (S.D.N.Y. 2010) (internal quotation marks and
citations omitted).

          According to Defendants, Plaintiff's municipal claims
against the MTA should be dismissed because the Amended
Complaint fails to identify a custom or policy that caused a
constitutional injury, nor does the Amended Complaint establish
that Olshanetskiy and D'Agostino were employees with final
policymaking authority.  Defendants contend that the Amended

Complaint reiterates what Plaintiff set forth in her opposition to Defendants' motion to dismiss the original complaint, namely that D'Agostino's office was responsible for managing sick leave and service-related injury cases, and Olshanetskiy's office was responsible for medically evaluating and determining if a member was fit for duty following a report of sick leave or service-related injury.  According to Defendants, the May 29 Opinion held that these allegations were insufficient to support a § 1983 claim.

        The Amended Complaint does not allege the existence of an official policy or custom that caused Plaintiff to be subjected to a denial of a constitutional right.  To the contrary, the Amended Complaint alleges that the drug testing of Plaintiff was contradictory to the Memorandum of Agreement between the MTA and the Police Benevolent Association and the MTA's own substance abuse policy.  Accordingly, the only way Plaintiff's claims against the MTA can survive under Monell is if the Amended Complaint pleads wrongdoing on the part of an employee with final policymaking authority.  With respect to the job responsibilities of D'Agostino and Olshanetskiy, the Amended Complaint states:

13

Defendant JOHN D'AGOSTINO (hereinafter "D'Agostino"), at
all times relevant hereto, was and still is a Deputy Chief
of Police for defendant MTA.  He is the Commanding Officer
of defendant MTA's Internal Affairs Bureau and Medical
Control Unit.  In such capacity, he is thereby delegated
with the responsibility "for managing sick leave and
service-related injury cases and assisting with the
coordination and evaluation of such cases with the MTA
Occupational Health Service Department (OHS)." . . .

Defendant OLEG OLSHANETSKIY (hereinafter "Olshanetskiy"),
at all times relevant hereto, was and still is a Physician
and is the Medical Review Officer (MRO) for defendant MTA's
Occupational Health Services Department.  Defendant
Olshanetskiy has identified himself as "Medical Director"
in charge of MTA Police Medical Department. . . . In such
capacity, he is thereby delegated with the responsibility
"for medically evaluating and determining if a Member is
fit for duty following a report of sick leave or service-
related injury." . . .

At all times relevant hereto and in all their actions
described herein, the individual defendants were acting
under color of law and pursuant to their authority as
public officers.

The individual defendants supervised, facilitated,
participated in, approved, carried out, conspired with each
other and were aware of but failed to prevent the alleged
activities complained of herein and are being sued
individually as well as in their official capacities.

Am. Compl. ¶¶ 16-19.


        Rather than establish the policy formulation or

rulemaking authority of D'Agostino and Olshanetskiy, these

allegations assert that D'Agostino and Olshanetskiy had the

authority to make decisions pursuant to the rules in place.

                              14

Such allegations are insufficient to establish the MTA's

liability under Monell.  See Chin v. N.Y. City Housing Auth.,

575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008) ("The critical

characteristic of final policymakers when employment is at issue

is whether the municipal official has authority to formulate the

rules governing personnel decisions rather than authority to

make decisions pursuant to those rules[.]") (citing Pembaur, 475

U.S. at 483 n.12).  Because the Amended Complaint fails to

allege the existence of a policy or the rulemaking authority of

D'Agostino or Olshanetskiy, Plaintiff has failed to assert a

valid cause of action against the MTA.

## B. The Amended Complaint Alleges Valid Unreasonable Search And Seizure Claims

As was the case with the original complaint, the first

and second counts of the Amended Complaint allege Fourth, Fifth

and Fourteenth Amendment violations on the basis of unreasonable

search and seizure.  The first count focuses on the urine test

conducted on January 22, 2010, and the second count focuses on

the urine tests conducted on August 14, 2009, March 26, 2010 and

July 20, 2010.  As was noted in the May 29 Opinion, the Fourth

Amendment guarantees "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable

15

searches and seizures[.]" U.S. Const. amend. IV. "[C]ompulsory urinalysis of public employees qualifies as a 'search and seizure' within the meaning of the Fourth Amendment." Coppinger v. Metro-North Commuter R.R., 861 F.2d 33, 35 (2d Cir. 1988). However, public employees working in safety sensitive jobs may be subject to compulsory drug testing based upon a reasonable suspicion standard as opposed to the probable cause standard applied to other warrantless searches. Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 622-23, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); see also Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (holding that drug testing of Custom Service employees seeking promotion to positions having direct involvement in drug interdiction or requiring the incumbent to carry firearms need only meet standard of reasonableness in order to meet requirements of the Fourth Amendment).

According to Defendants, the Amended Complaint's two causes of action alleging unreasonable search and seizure should be dismissed for the same reasons identified in the May 29 Opinion, namely because Plaintiff, as an MTA police officer, was working in a safety-sensitive position at the time in question and, therefore, was properly subject to random urine drug

testing.  Defendants reject Plaintiff's contention that she was
not working in a safety sensitive position because she was not
performing the usual duties of a police officer, was on
restricted duty, was employed in civilian clothes and at no time
possessed a firearm, instead contending that numerous federal
court decisions cited in the May 29 Opinion establish that not
having a firearm does not automatically establish Plaintiff to
be in a non-safety sensitive position.

       Defendants also claim that Plaintiff's factual
contention that she did not possess a firearm is false.  To
support this contention, Defendants have provided the Court with
Plaintiff's MTA Firearms Training Qualification Records showing
that Plaintiff had been issued a firearm during the relevant
time period and a letter from Plaintiff's physician advising the
MTA in November 2010 that Plaintiff, who up until that point had
been in possession of a firearm, should not be carrying a gun.

       Defendants' arguments concerning the veracity of the
Amended Complaint's factual contentions are disregarded, as the
facts pled in the Amended Complaint are accepted as true at this
stage of the litigation.  See Kassner v. 2nd Ave. Delicatessen,
Inc., 496 F.3d 229, 237 (2d Cir. 2007) ("In considering a motion

17

to dismiss . . . the court is to accept as true all facts alleged in the complaint.") (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)).

Defendants are correct that the May 29 Opinion cited several decisions in which police officers were considered to be in safety-sensitive positions notwithstanding the fact these officers did not carry firearms. See Perez, 2012 WL 1943943, at *6 (citing Burke v. N.Y. City Transit Auth., 739 F.Supp. 814, 825-26 (S.D.N.Y. 1990), Kreuter v. Reuter, No. 01-CV-5229(NGG), 2002 WL 31946715, at *1 (E.D.N.Y. Dec. 5, 2002); Int'l Bd. of Teamsters v. Dep't of Transp., 932 F.2d 1292, 1304 (9th Cir. 1991); Bluestein v. Skinner, 908 F.2d 451, 457 (9th Cir. 1990)). Furthermore, the May 29 Opinion held that, with respect to the January 22 drug test (which was conducted randomly), "[b]ecause the Complaint pleads Plaintiff to have been employed as a police officer, Plaintiff held a safety-sensitive position and could be subject to random drug testing." Id.

However, it must also be noted that, although Plaintiff cited the November 2002 Memorandum of Agreement between the MTA and the Police Benevolent Association in her

opposition to Defendants' motion to dismiss the original complaint, the Court was unable to consider this Memorandum of Agreement in the May 29 Opinion, as the Court could not consider a document outside the pleadings in the context of a Rule 12(b)(6) motion where the outside document was neither incorporated by reference nor integral to the complaint. See Perez, 2012 WL 1943943, at *5-6. In the Amended Complaint, Plaintiff has alleged facts concerning the November 2002 Memorandum of Agreement between the MTA and the Police Benevolent Association, see Am. Compl. ¶¶ 28-29, including the fact that the parties agreed to "interpret the federal regulations to mean that members of the Department who do not carry a firearm for security purposes are not performing safety sensitive duties and therefore will not be subject to the US DOT/FTA alcohol and drug testing procedure." Am. Compl. ¶ 29.

These additional facts change the analysis as to whether Plaintiff was operating in a safety-sensitive position. While there is case law to suggest Plaintiff, notwithstanding her lack of firearm, held a safety-sensitive position by virtue of her status as a police officer, a court is to grant a motion to dismiss pursuant to Rule 12(b)(6) "only if it appears certain that under no possible set of facts would the plaintiff be

19

entitled to relief." Mirman v. Berk & Michaels, P.C., No. 91
Civ. 8606(JFK), 1992 WL 332238, at *2 (S.D.N.Y. Oct. 30, 1992)
(citing Lipsky v. Commonwealth United Corp., 551 F.2d 887 (2d
Cir. 1976)). The Amended Complaint alleges that Plaintiff did
not possess a firearm while she was on restricted duty, Am.
Compl. ¶ 27, that a November 2002 Memorandum of Understanding
between the MTA and Police Benevolent Association established
that employees who did not possess a firearm were "not
performing safety sensitive duties and therefore will not be
subject to the US DOT/FTA alcohol and drug testing procedure,"
Am. Compl. ¶ 29, and that Plaintiff was subject to four drug
tests while she was on restrictive duty, Am. Compl. ¶¶ 36, 42.
As such, Plaintiff has alleged sufficient facts to present a
plausible unreasonable search and seizure claim with respect to
the January 22, 2010 urine test as well as the urine tests
administered on August 14, 2009, March 26, 2010 and July 20,
2010. Accordingly, Defendants' motion to dismiss the first and
second counts of the Amended Complaint is denied.


## C. The Amended Complaint Fails To Allege A Valid Due Process Claim

The Amended Complaint's third cause of action alleges
violation of Plaintiff's Fifth and Fourteenth Amendment rights

20

resulting from the denial of procedural and substantive due

process.  The fourth cause of action similarly alleges that

Defendants "intentionally and recklessly deprived plaintiff of

her liberty interest without due process of law in violation of

the Fifth and Fourteen Amendments to the United States

Constitution."  Am. Compl. ¶ 75.  As was noted in the May 29

Opinion, "[t]o state a due process violation – procedural or

substantive – Plaintiff must first show a deprivation of a

constitutionally protected property or liberty interest."

Berrios v. State Univ. of N.Y. at Stony Brook, 518 F. Supp. 2d

409, 418 (E.D.N.Y. 2007) (citing White Plains Towing Corp. v.

Patterson, 991 F.2d 1049, 1061-62 (2d Cir.), cert. denied, 510

U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); Costello v.

McEnery, No. 91 Civ. 3475(PKL), 1994 WL 410885, at *4 (S.D.N.Y.

Aug. 3, 1994), aff'd, 57 F.3d 1064 (2d Cir. 1995)).  "It is only

when such a right is established that the court may turn to a

discussion of whether there has been a deprivation of that right

without due process."  Berrios, 518 F. Supp. 2d at 418.


        In her opposition, Plaintiff raises an argument

similar to that raised in opposition to Defendants' motion to

dismiss the original complaint, namely that Plaintiff had the

expectation that she would be treated in accordance with the

21

applicable agency policy and procedures and that this policy
created a property right that was undermined and violated.   This
argument was rejected in the May 29 Opinion:

> Plaintiff, in her opposition to Defendants' motion to
> dismiss, claims that the property right of which she was
> deprived was the expectation that she would be treated in
> accordance with the applicable agency policy and
> procedures.  However, "[a] property interest does not exist
> solely because of the importance of the benefit to the
> recipient." Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170,
> 175 (2d Cir. 1991).  Plaintiff cannot claim a property
> interest in the MTA's policy and procedures.  See Beacon
> Syracuse Assocs. v. City of Syracuse, 560 F. Supp. 188, 195
> (N.D.N.Y. 1983) ("[T]here is no property interest in a
> procedure itself."); see also Curtis Ambulance of Fla. v.
> Shawnee Cty. Bd. of Cty. Comm'rs, 811 F.2d 1371, 1377 n.2
> (10th Cir. 1987) (collecting cases).  Because the Complaint
> fails to allege a valid property interest of which
> Plaintiff was deprived, the Complaint fails to state a
> valid cause of action for either procedural or substantive
> due process violations.  The Complaint's cause of action
> entitled "Violations – Due Process Liberty Interest" is
> also dismissed on these grounds.

Perez, 2012 WL 1943943, at *8.  Because the Amended Complaint
fails to plead deprivation of a constitutionally protected
property or liberty interest, Plaintiff's third and fourth
causes of action alleging due process violations are dismissed.

**Conclusion**

22

Based on the conclusions set forth above, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.

It is so ordered.

**New York, NY**
**August 5, 2012**

_____
**ROBERT W. SWEET**
**U.S.D.J.**

23